**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **AQUA WATER SUPPLY CORP.** | § | |
| | § | |
| **v.** | § | **A-11-CV-885-LY** |
| | § | |
| **CITY OF ELGIN, et al.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are: TCEQ Defendants' Preliminary Motion for Attorney's Fees, Motion for Extension of Time, and Motion to Set Briefing Schedule (Dkt. No. 103); Aqua Water Supply Corporation's Objection and Response to the TCEQ Defendants' Preliminary Motion for Attorney Fees, Motion for Extension of Time and Motion to Set Briefing Schedule (Dkt. No. 105); and TCEQ Defendants' Reply in Support of Preliminary Motion for Attorney's Fees, Motion for Extension of Time, and Motion to Set Briefing Schedule (Dkt. No. 108). The parties also filed various Motions for the Court to Consider Supplemental Authority (Dkt. Nos. 111, 118, and 119). The District Court referred these Motions to the undersigned Magistrate Judge for report and recommendation.

## I. BACKGROUND

Plaintiff Aqua Water Supply Corporation ("Aqua") possesses a Certificate of Convenience and Necessity ("CCN"), which allows it to be the exclusive water service provider over a specifically defined geographic territory. In September 2011, Austin Community College ("ACC") filed a petition with the Texas Commission on Environmental Quality ("TCEQ"[1]) under Texas Water Code

---

[1]Aqua sued TCEQ and all of its commissioners in this case. For ease of reference, the court will refer to all of these parties jointly as "TCEQ."

§ 13.254(a-5) to have its property removed from Aqua's CCN area.  When TCEQ granted the petition, Aqua appealed TCEQ's order to the Travis County District Court, and also filed suit in this court, alleging that § 13.254 is preempted by 7 U.S.C. § 1926(b) and requesting an injunction against its future enforcement.  In its federal suit, Aqua asserted claims under the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI, cl. 2, the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, and 42 U.S.C. § 1983.  Aqua also asserted a claim for attorney's fees against the TCEQ Defendants pursuant to 42 U.S.C. § 1988.

Thereafter, in March of 2012, Aqua settled all its claims with ACC and ACC was dismissed from the federal litigation. (Dkt. No. 72).  On June 18, 2012, Aqua filed a Motion for Summary Judgment regarding its claims that Texas Water Code § 13.254 violate the Sepremacy Clause of the United States Constitution. (Dkt. No. 82).  On July 5, 2012, the TCEQ filed a Motion to Abstain (Dkt. No. 83) and a Motion to Dismiss (Dkt. No. 84).  In February of 2013, the TCEQ consented to an order entered by the state court which vacated the Decertification Order.  That order was entered on February 15, 2013. After a hearing on February 19, 2013, Judge Yeakel entered an order on February 28, 2013, granting in part the TCEQ's Motion to Dismiss, finding that the resolution of the Aqua-ACC dispute, along with the state court's vacating of the decertification order, mooted Aqua's preemption claim. Dkt. No. 96.  At that time, however, Elgin and Aqua's claims, though settled, had not been dismissed, as their settlement agreement was conditioned on the TCEQ approving the changes to Aqua's CCN acreage agreed to between Aqua and Elgin.  Eventually, on April 18, 2013, shortly after TCEQ approved the modifications, Aqua and Elgin filed a motion to approve their settlement (Dkt. No. 99), which Judge Yeakel did on April 22, 2013 (Dkt. No. 101).  A final judgment was then entered in the case on that same date. Dkt. No. 102.

2

Shortly thereafter, on May 6, 2013, the TCEQ filed the motion now before the court, seeking an award of $250,000 for the attorney's fees the TCEQ contends it incurred defending not only this case, but also the state court appeal from the TCEQ's order approving ACC's application to remove property from Aqua's certificated acreage.  The parties appeared for a hearing on the motions on January 23, 2014.

### III.  ANALYSIS[2]

#### A.  Timeliness of Request

TCEQ filed its Preliminary Motion for Attorney's Fees on May 6, 2013.  In this Motion, it notes that "While a motion for attorney's fees must be filed within 14 days of the clerk's entry of judgment, the 1993 Notes of the Advisory Committee to FED. R. CIV. P. 54(d) note that the rule does not require a motion for attorney's fees to be supported at the time it is filed." Motion at p. 2.  Based on this comment to the 1993 version of Rule 54, the TCEQ submitted no evidentiary support with its motion, and requested that it be permitted to conduct discovery and submit evidentiary materials after preliminary rulings on its motion.  The TCEQ's approach in this regard is inconsistent with this

---

[2]In their supplemental briefing, the parties engage in a debate over whether a federal district court may can grant a prevailing party's request for attorney's fees pursuant to § 1988 in a case that was dismissed for lack of subject matter  jurisdiction. The circuit courts appear to be split on this issue.  The Second, Eighth and Ninth Circuits prohibit a fee award following a dismissal based on subject matter jurisdiction.  *See W.G. v. Senatore*, 18 F.3d 60 (2d Cir. 1994); *Keene Corp. v. Cass*, 908 F.2d 293, 298 (8th Cir. 1990); *Branson v. Nott*, 62 F.3d 287, 293 (9th Cir. 1995).  The Seventh and Tenth Circuits have reached the opposite conclusion.  *Citizens for a Better Environment v. Steel Co.*, 230 F.3d 923, 925-28 (7th Cir. 2000); *U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1055-56 (10th Cir. 2004).  The Fifth Circuit has not specifically addressed this issue, but in a footnote to *El Paso Ind. Sch. Dist. v. Berry*, 400 Fed. App'x 947, 951 n. 7, 2010 WL 4459735 (5th Cir. 2010), a per curium unpublished opinion, the panel stated "a lack of subject matter jurisdiction over the underlying substantive claim bars a court's jurisdiction over fee applications."  Because this remains an open issue in this circuit, and because the undersigned recommends that no fees be awarded regardless of jurisdiction, the court need not reach or decide this issue of first impression in this circuit.

court's local rules.  Local Rule CV-7(j) plainly states what must be filed with a request for attorney's fees:

> Unless the substantive law requires a claim for attorney's fees and related nontaxable expenses to be proved at trial as an element of damages to be determined by a jury, a claim for fees shall be made by motion not later than 14 days after entry of judgment pursuant to Federal Rule of Civil Procedure 54(d)(2) and pursuant to the following provisions. Counsel for the parties shall meet and confer for the purpose of resolving all disputed issues relating to attorney's fees prior to making application. The application shall certify that such a conference has occurred. If no agreement is reached, the applicant shall certify the specific reason why the matter could not be resolved by agreement. The motion shall include a supporting document organized chronologically by activity or project, listing attorney name, date, and hours expended on the particular activity or project, as well as an affidavit certifying (1) that the hours expended were actually expended on the topics stated, and (2) that the hours expended and rate claimed were reasonable. Such application shall also be accompanied by a brief memo setting forth the method by which the amount of fees was computed, with sufficient citation of authority to permit the reviewing court the opportunity to determine whether such computation is correct. The request shall include reference to the statutory authorization or other authority for the request.

TCEQ has failed to comply with any of the requirements of this rule.  It has failed to confer with opposing counsel and failed to note the result of such a conference.  It did not submit evidence of the hours expended and the reasonableness of the rate requested, or any description of the work it is seeking to be compensated for, notwithstanding that 8 months have passed since it made its request for fees.  For this reason alone, the TCEQ's request for attorney's fees should be denied.

### B.      Prevailing Defendant Status

In a claim brought under § 1983 claim, the district court may grant "the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.  A defendant may be awarded its fees under § 1988 only where the plaintiff's complaint was frivolous, unreasonable, or groundless, or if the plaintiff continued to litigate after the complaint was found so.  *Myers v. City of West Monroe*, 211 F.3d 289, 292 (5th Cir. 2000); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 277

(3d Cir. 1990); *see also Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422 (1978). The

Supreme Court has explained that:

> Meritless is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case. . . . In applying these criteria it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

*Christiansburg*, 434 U.S. at 421-22. The high standard applied to defendants under § 1988 is

designed to "ensure that plaintiffs with uncertain but arguably meritorious claims are not altogether

deterred from initiating litigation by the threat of incurring onerous legal fees should their claims

fail." *Aller v. N.Y. Bd. of Elections*, 586 F.Supp. 603, 605 (S.D. N.Y. 1984).

The factors a court should consider in deciding whether a claim is frivolous or groundless,

are: (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to

settle; and (3) whether the court dismissed the case or held a full trial. *Myers v. City of W. Monroe*,

211 F.3d 289, 292 (5th Cir. 2000). "These factors are, however, guideposts, not hard and fast rules.

Determinations regarding frivolity are to be made on a case-by-case basis." *See E.E.O.C. v. L.B.*

*Foster Co.*, 123 F.3d 746, 751 (3d Cir. 1997). "Allegations that, upon careful examination, prove

legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without

foundation' as required by *Christiansburg*." *Hughes v. Rowe*, 449 U.S. 5, 15–16 (1980). TCEQ

asserts that Aqua's claims qualify as groundless or frivolous on three bases. *First*, it asserts that

Aqua's § 1983 claim was barred by well-settled law because Aqua could not state a § 1983 claim

that the state statue was preempted. *Second*, it asserts that there was no basis for Aqua to continue

litigating with TCEQ after Aqua settled with ACC. *Third*, TCEQ asserts that Aqua should have

conceded the arguments in the Motion to Abstain, but continued to litigate despite the obvious merits of the abstention arguments.  As will be seen, none of these arguments have merit.

TCEQ first asserts that Aqua's § 1983 claims were based on an "undisputably meritless legal theory," and failed to state a claim upon which relief could be granted, and thus were legally groundless. *Doe v. Silsbee Independent School District*, 440 Fed. App'x 421, 425, 2011 WL 4056739 at *3 (5th Cir. 2011).  At the hearing, to support this assertion, TCEQ relied on *Citizens for Honesty & Integrity in Reg'l Planning v. Cnty. of San Diego*, 258 F.Supp.2d 1132, 1135 (S.D. Cal. 2003), *appeal dismissed and remanded*, 399 F.3d 1067 (9th Cir. 2005).  TCEQ argues that because the allegedly preempting federal statute—7 U.S.C. § 1926(b)—was enacted by Congress pursuant to the Spending Clause, it is contractual in nature and does not automatically preempt state or local law.[3]  Aqua responds that Count 8 of its First Amended Complaint states a claim pursuant to § 1983 and is sufficient to withstand a frivolousness claim.  The Complaint pled  that TCEQ and its commissioners acted under color of state law to deprive Aqua of its federal rights pursuant to § 1926(b). Dkt. No. 24 at 16-17.  Aqua contends that *Gomez v. Toledo*, 446 U.S. 635, 640 (1980), holds that to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the

---

[3]The Supreme Court has "repeatedly characterized ... Spending Clause legislation as 'much in the nature of a contract: in return for federal funds, the [recipients] agree to comply with federally imposed conditions.' " *Barnes v. Gorman*, 536 U.S. 181 (2002) (quoting *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981)). Thus, "the legitimacy of Congress' power to legislate under the spending power ... rests on whether the [recipient] voluntarily and knowingly accepts the terms of the 'contract.' " *Id.* (emphasis added). TCEQ reasons that, because the state and local entities were not parties to the agreement between Aqua and the federal agency, they are not bound by that contract.

deprivation was visited upon him by a person acting under color of state law. Aqua maintains that its First Amended Complaint met these pleading requirements and that TCEQ never moved to dismiss this claim for failure to state a claim, and only moved to dismiss on jurisdictional grounds. Aqua also points out that it pled a separate preemption claim in Count 9, pursuant to 28 U.S.C. §§ 2201and 2202, not § 1983.

Aqua is correct.  Count 8 the § 1983 claim does not mention preemption.  That claim was brought as a separate claim.  Thus, *Citizens for Honesty,* does not apply to Aqua's separately-pled § 1983 claim. On their face, both claims meet basic pleadings standards.  Additionally, TCEQ did not raise the Spending Clause argument until relatively recently in the course of litigation. In fact, the TCEQ filed a forty-two page Motion to Dismiss in this case (Dkt. No. 84), which discusses many facets of the preemption claim, but does not argue that it is baseless because § 1926(b) was passed pursuant to Congress' Spending Clause authority. Further, at the hearing before the undersigned, counsel for TCEQ conceded that this area of the law is "narrow and arcane" and also admitted that it took him several months to understand the argument himself.  Such a "narrow and arcane" point, even if correct (something the Court is not reaching here), is an insufficient basis on which to find Aqua's claims frivolous, unreasonable or groundless.  If the claim was obviously so lacking for this reason, TCEQ would not have waited until requesting attorneys fees to raise the argument.  In short, TCEQ's contention that the preemption claim was frivolous from the start asks the Court to employ the very *post hoc* reasoning that *Christiansburg* warns against, and lacks merit.

The TCEQ's second claim is that the ACC-Aqua settlement mooted all claims against TCEQ in the federal lawsuit, and Aqua should have known that there was no longer a case or controversy. Because Aqua continued to litigate against it despite this, TCEQ claims it is entitled to attorney's

7

fees for its costs after the settlement.  Aqua responds that its settlement with ACC merely provided that ACC would join in and support a motion in the state court to vacate the Decertification Order, and it did not end the preemption fight over § 13.254.  Aqua asserts that its settlement with ACC by itself was not enough to resolve the dispute, as TCEQ had not yet agreed to vacate its Decertification Order.  Aqua maintains that it took eleven months and continued litigation to convince the TCEQ to agree to do so.  Aqua further notes that Judge Yeakel did not find that the settlement with ACC mooted its claims, but rather it was the settlement *coupled with* the state court's entry of the agreed order vacating the Decertification Order that ended any live case or controversy.  *See* Dkt. No. 96 at 9-10.

Once again, the undersigned agrees with Aqua on this point.  The settlement between Aqua and ACC alone did not moot the federal court litigation.  Judge Yeakel's order stated that Aqua could not meet the case or controversy requirement for prospective injunctive or declaratory relief because it could not show a continuing harm or a real and immediate threat of repeated injury once the state court entered the order vacating the Decertification Order, officially returning the ACC property to Aqua's CNN. *Id.* at 8.  It was not groundless or frivolous for Aqua to continue to seek a declaration regarding the preemption issue while the Decertification Order was still in place, and there is no evidence before this Court demonstrating that the TCEQ had given Aqua a promise of any kind that it would vacate the order if Aqua and ACC requested that at the agency level.  The litigation was only rendered moot when TCEQ's order was vacated.  Thus, Aqua's decision to continue litigating this case after the settlement with ACC was not unreasonable or frivolous.

Finally, the TCEQ contends that Aqua should have conceded the merits of TCEQ's Motion to Abstain and that any litigation after that point was frivolous.  In that motion, TCEQ contended that

the federal court was required to abstain from ruling on Aqua's preemption claim because a ruling in Aqua's favor would have the effect of enjoining the state court appeal of the TCEQ's Decertification Order, and Aqua should not have opposed this abstention. As with the prior two, this assertion is lacking.

First, the TCEQ filed a 30-page Motion to Abstain (Dkt. No. 83) and Aqua filed a 33-page Response (Dkt. No. 85). Judge Yeakel did not reach the merits of the abstention issue, but rather found the case was moot. Moreover, the TCEQ Anti-Injunction Act argument was no slam dunk—which is what would be required for this Court to make a frivolousness finding against Aqua. The state court appeal was an appeal of the TCEQ's Order, while a decision by a federal district court on the issue of preemption would not necessarily have had the effect of staying the state court litigation. As Aqua pointed out in its Response to the Motion to Abstain, the federal suit challenged the constitutionality of the statute itself, while the state court appeal challenged the meaning of the state statutory language. Moreover, the parties argued hard and lengthily in their briefing about the abstention issue. This is not a case where a party made an obviously meritorious argument, and their opponent refused to concede a point they should have. The briefing on this issue makes it rather plain that it is not the type of issue on which a court could properly conclude that the failure to concede the issue should result in an award of attorneys fees.

On a final note, the Court rejects TCEQ's suggestion that it would somehow be entitled to recover fees expended in the state court administrative appeal even if the Court were to accept TCEQ's assertion that Aqua's claims against TCEQ in *this* court were baseless. First, and foremost, the issue of fees in the state court action was decided by the state court. As noted earlier, the parties resolved the state court case through an agreed order vacating the TCEQ's decertification order.

9

That order—which bears the TCEQ's counsel's signature—provides that "each party" was "to pay its own costs and attorney fees." This order, to which the TCEQ agreed, prevents TCEQ from seeking recovery of those fees here.

Even if the state court had not foreclosed the issue. TCEQ has failed to show it is entitled to the fees spent in the administrative appeal as a prevailing defendant under § 1983. In support of its contention in this regard, TCEQ relies on *Exeter-West Greenwich Reg'l Sch. Dist. v. Pontarelli*, 788 F.2d 47 (1st Cir. 1986). In *Exeter-West*, the plaintiff filed a federal claim in federal court, and the court then certified a question regarding an interpretation of state law to the Rhode Island Supreme Court. That court agreed to hear the issue and the federal court then abstained.[4] The Rhode Island court found for the plaintiff and the federal court subsequently dismissed the federal action as moot. The plaintiff then sought in the federal action the recovery of its fees. The federal court awarded the fees, treating the plaintiff as a prevailing party because it had achieved the result desired by filing the federal case and the facts tried in the state court litigation arose from the same nucleus of operative facts as the federal case. Similarly, in *Bartholomew v. Watson*, the Ninth Circuit affirmed the award of fees incurred in a related state proceeding where:

> [t]he state court action was initiated and pursued solely because of the filing of the section 1983 civil rights claim in federal court. The state issues were substantially the same as those raised in the federal claim. The parties stipulated to the suspension of the federal action and to the testing in Oregon's courts of pertinent state statutes which might have been dispositive of the section 1983 claim. . . . The initial determination of potentially conclusive state law issues was an integral part of the section 1983 claim. . . .

---

[4]The abstention was based on *Railroad Commission of Texas v. Pullman*, 312 U.S. 496 (1941), which held that where resolution of an unclear question of state law might avoid the need to decide a federal constitutional question, federal courts may decline to exercise jurisdiction pending resolution of the state law issues in state court.

10

*Bartholomew v. Watson*, 665 F.2d 910, 913 (9th Cir.1982).

The facts of this case are obviously quite different than those in *Exeter-West* or *Batholomew*. There was no state law issue here that required certification or decision in state court, nor was anything ever certified to a state court.  The parallel state appeal was independent of the federal case, and not an outgrowth of the federal case as in *Exeter-West* and *Bartholomew*.  Additionally, in *Exeter-West* , the Plaintiff was awarded fees for prevailing on an issue it pled in federal court, but won on the merits through state court certification.  Essentially the same was the case in *Bartholomew*.  That is not the case here. In this case, Aqua filed its case in federal court alleging constitutional violations, and then separately filed a case in state court appealing the TCEQ's ruling decertifying the ACC property.  Thus, even if the state court had not decided the issue of attorneys fees, and even if the TCEQ had been able to show that Aqua's § 1983 case in this Court was groundless, TCEQ would not be entitled to recover the state court fees, as those fees were not sufficiently related to Aqua's § 1983 case.

## IV.  RECOMMENDATION

For the reasons set forth above, the Court **RECOMMENDS** that the TCEQ Defendants' Preliminary Motion for Attorney's Fees, Motion for Extension of Time, and Motion to Set Briefing Schedule (Dkt. No. 103) be **DENIED**.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 7th day of February, 2014.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE